Good morning, Your Honors. At the Police of the Court, my name is Michael Stern and I represent the appellant J.B. Painting and Waterproofing, Inc. Your Honors, this is a product defect case concerning a cleaning product that was utilized by my client to attempt to remove soap scum and other dirt from an eight-story glass office building in Orlando, Florida. My client purchased the product from the defendant, RGB. It came in five different shipments to my client. After the job was done, which went basically from June of 2008 to December of 2008, everything seemed fine. Three months later, however, the owner of the building called my client back and he said, you know, we're seeing all these tiny little swirls in our glass. Excuse me. My client went out to the building, looked at the problem, had it investigated, and it turns out my client determined that it was his fault. Can I ask you a couple questions about that shipment? Of course. When I opened the file, I was expecting a battle of the forms. I expected the invoice would say one thing about choice of law and that the bill of – I can't remember exactly what documents there were. I don't know if I saw them. I couldn't find the documents for the sale and purchase to see whether there were conflicting choice of law clauses or other limitations that might affect the case. Are they in the file and did I miss them? There are none, Your Honor. The choice of law issue comes up and we're arguing that today because the products were delivered and therefore title passed to my client in Florida. It's not a battle of the forms. It's the forms that I was asking about just then. There are none. There are delivery forms, but there are no forms that have conflicting provisions about what law applies. There's no choice of law in the delivery forms, right? Correct. On the use of the stuff, I know it was multiple shipments. Did the window washing company in Florida start using the stuff when the first shipment came or was there enough to get going without the risk of interrupting the job or was it the sort of thing where you have to wait for pretty much the whole shipment before you can start or is there nothing in the record to say one way or the other? They ordered what they needed periodically, Judge. It was not a situation where you needed to have everything on site the first time. Of course, you'd run the risk that your men might run out of materials. What I was thinking was if I have no idea the quantities involved, so I'm making these numbers up, but suppose you need 100 buckets to do the windows and you get 10 buckets. Well, you don't want to put up your scaffolding and send your people up the building and then have a risk that all that stuff is just going to be hanging off the side of the building for six weeks until you're waiting for another shipment. On the other hand, if your first shipment is enough so that there really is no risk of that, you're going to start when you get the shipment. Which was it or does the record not say? The record doesn't reflect that. There was very little discovery in this case, Your Honor, before it was dismissed with prejudice and a sentency. So, that said... Well, rather than... So, your reply brief relies entirely on California law in addressing your warranty contract and indemnity claims. Do you agree that the panel does not need to conduct a choice of law analysis of these claims because you have not shown a conflict exists? No, what we are arguing is that Florida law applies. We already have a ruling that California law applies. We do have an argument today why Florida law applies. It's the same argument we made below when it was restricted. What is the conflict? The conflict is the case law in California. The case is... Excuse me. Cummings, Inc. versus the Supreme Court. It is a California case. And what it simply involved was a California couple that bought a Winnebago. They bought it, but they had it delivered to Nevada. After they had it delivered to Nevada, they went back home to California. They had it serviced in California, and the service apparently wasn't great and the engine wasn't great, so they tried to make a claim under a consumer protection law in California. And the court said, No, you don't get to do that because you bought that vehicle in Nevada. And the title passed to you in Nevada. So our argument was that we bought these bottles of BioClear. They were shipped to us per the contract, and the title passed to us in Florida. And so, like the title passed to that couple in Nevada, it was that stuff. I wasn't sure about the analogy there. My thinking was, would the Winnebago use a motor vehicle registration of title? And probably they would take delivery in Nevada and register it, get title in Nevada, so that it's titled to the owner instead of the dealer in Nevada to avoid the California sales tax. But I thought that on this kind of stuff, title would pass in California when it was shipped, unless there was something in the forms that said the title didn't pass until it got to Florida. That's just about accurate, Judge, except I'll clarify it in one respect. Unless there's something in the contract. It doesn't have to be a form. It could be a verbal contractual agreement about where title was going to pass. True enough. And that is not something that came up in the case because, again, in its infancy it was gone before it started. It's not in the UCC. Is it adopted in California that title passes when it's put on board with the shipper? I believe that, again, goes back to the contract issue and what the parties intended. Well, the California Commercial Code 27252 is a cruel-upon-delivery rule. It applies to your warranty and contract claims. So when the window damage was or should have been discovered, it's irrelevant, isn't it? It's not because there are several exceptions to the statute of limitations in California, Your Honor, dealing with that very issue. For example? For example, when there are multiple shipments. The continuous accrual doctrine? It's last delivery. Last delivery. I missed that. What's the authority for that? I'm fining for you right now, Judge. And I would like last delivery. Yes, multiple delivery. You're in a multiple delivery situation, as was the case in Cardinal Health 301, Inc. v. Tyco Electric Corp. The court stated that the statute of limitations under California Code 2725 for the purchase contract to sell 1 million spring probe connectors accrued after the last delivery was tendered. Is that the last delivery of one purchase? The last delivery. How many purchases were there in this case? Again, Judge, that's a fact that did not come out through discovery. But you have different invoices, do you not? So you argue that California continuing accrual doctrine should apply to your warranty and contracts claims such that each delivery of BioClean is a separate breach, but some of which occurred within the limitations period and others not. So what's your best case to support your argument that the duty defendants owed you was a continuous one susceptible to recurring breaches? I don't see a case out there that supports your position. I mean, because that case that you just cited is distinguishable. Right. Well, it's either a single contract with multiple deliveries, which apparently this case was. What do you mean, apparently? You know, every time there's a modifier, my hair goes up. What do you mean, apparently? Well, that's the case that I just read to you. Yeah, but what's this case? This case, we never got to that point. There are separate invoices, so it could be. Suggesting that that case that you just cited is inapposite. Perhaps. In this case, it could be a separate contract at each delivery, some of which, and I go into the additional statute of limitations, as you'll see, could be within the statute. Did you front this information in the motion? In our motion? Yeah, you're claiming perhaps, we don't know. Well, did you raise this in the district court? We didn't have a chance to raise this in the district court. I don't understand something here. We've got these questions where there is not discovery yet, so we don't have facts. Was the case cut off in some way, a denial of 56F motion on the summary judgment, and where more was needed, or did people just not do the discovery during the discovery period, or what happened? The discovery period was just commencing, Judge. Because you're at 12B6 and 12C dismissals, right? Yes. We have the response, the amended complaint, 1023, motion to dismiss. I see. So what you're saying is because it was 12B6 and not summary judgment, it was before the discovery would have been done for summary judgment, so you really don't know these facts. Correct, Your Honor. Were you given the opportunity, though, to present to the court the stuff that you're saying now is not in the record? I mean, did they just drop a bomb on you, or did you have an opportunity to tell the district court? We filed an opposition to the motion to dismiss. And did you put in the opposition the information that you're giving to us now and ask for discovery on that? No. Why not? I mean, now this is your winning point. It's one of many points, Your Honor. We didn't seek a postponement of that hearing based on a lack of discovery. Why not? I mean, this is an appellate court. You're telling us things that should have been done in the district court, aren't you? I don't have an answer to that. Because it should have been done in the district court, correct? In retrospect, yes. Yeah, in retrospect, certainly. Could you have pleaded these things? I mean, this is the pleading stage. Could you have, in good faith, pleaded one purchase not completed until the last delivery was made, that sort of thing? If we had those facts at the time, we could have, and we attempted to plead them later. Why wouldn't you, though? I mean, I can see where you wouldn't have the documents from the California company, but it seems like you'd have the documents from the window-washing company in Florida and also the knowledge from the window-washing company people. All I can tell you, Judge, is that you've got a painting contractor in Florida, you've got a four-year-old project almost, and the documents weren't available. We ended up getting the documents from the other side. So you basically needed your own documents from the other side because the painting contractor in Florida doesn't have them. Correct. I get it now. Thanks. The next doctrine is the equitable tolling doctrine, and that comes in where you can't discover or you don't discover the problem for some reason. We pled that, although apparently not adequately, and what we said was you've got to do two elements. One, you've got to say when did you discover it, and two, you've got to say why did it take you long to discover it. We pled when we discovered it because we pled when the owner gave us the information because we're in a different part of the state. But that assumes that discovery is a factor in when the statute starts to run. It does. The discovery, when you discover it, and then the second part of it is you have to show that you couldn't have reasonably discovered it. And we didn't get a chance to plead that more specifically. I believe we had pled it implicitly in our complaint because we explained that we were in Deerfield Beach. The owner was in Orlando. The owner didn't even discover it until three months after we left. I guess your theory would be there's no way to discover it at the time of delivery until you put it on the windows, and the windows get messed up by the stuff instead of clean. Not only that. So you can sit on it for ten years before you use it? I think it would be unreasonable. What we're saying is when it was applied was one time during the year. Three months later, the sun had changed in the sky. There was now a different amount of sunlight from a different direction on this building, and that's when the owner of the building, who was actually on site, discovered it and called us back. Do you want to save any time for rebuttal? Yes, Your Honor. Okay. Good morning. Lana Martirosyan, for appearing for respondents, RGB Holdings, LLC, DBA, Rosenstein Company. Counsel, I have a question about applying California law. I'm having trouble seeing what governmental interest California has. You've got a manufacturer in California who sells stuff apparently nationally. This was sold to a Florida painting contractor for application to a Florida office building. What interest would California have in controlling the terms of the purchase and warranty? Well, California law is clear that the federal courts in a diversity action such as this case are to apply the state substantive laws. You start with the state substantive law on choice of law. Correct. And the choice of law issue in this case seems to boil down to multiple factors, a major one of which, perhaps a controlling one of which, is the California governmental interest versus the Florida governmental interest. And what I'm wondering is, what interest does California have? Once you do apply law of the forum to the issue of what is the choice of law doctrine, then you look for the governmental interest. And I'm trying to figure out what the interest of California is. I think to enforce its own laws. Which laws? Well, we have the California Commercial Code, Section 2401.2, which says title passes to a buyer at the time and place at which the seller completes the performance of the work. How do we know when performance was completed if we don't have the invoices? And why can't they plead the case that performance isn't completed until they get their window washing fluid? Well, because if the contract does not require, and the only contract here would be the purchase orders, if they don't require that the seller deliver directly to the buyer, then the title passes to the buyer at the time of shipment. And this is the case here. Title passes. They had the product at the time of the shipment was made. At that point in time. Well, no, they didn't. They would not receive the product at the time shipment was made. That would be a physical impossibility because of the 3,000 miles in between. They could only receive the product when shipment was completed. Correct, but this commercial code section states that it is complete at the time that shipment is made by the seller. And that was done here in California. There was nothing in the purchase orders that stated that we were to personally deliver to them in person in Florida. There's absolutely no language. Do we have the purchase orders? I don't. We did. I don't. I didn't see them in the excerpts when I was looking. I believe that they were included by appellant in their supplemental excerpts. Can you tell me just where so I can look? What I'm wondering is whether they could have the judge allowed amendment of the complaint, whether it could have been pleaded in good faith. They were actually raised at the hearing on the motion for leave to amend and the motion for judgment on the pleadings. And counsel did raise it and filed it with the court at the time. So it was before the court. So you say it was filed in connection with the motion for leave to amend the complaint that was denied? Yes. It was before the court at the hearing. When you say before the court at the hearing, I don't know if the lawyers were talking about it or if the documents are there or what. Yes, it was mentioned. And if I direct the court to the transcript of the proceedings, which is in the supplemental record excerpts filed by appellant, and it would be tab 4. And there is a transcript there. And there was oral argument during that hearing. So it sounds like you just answered this question differently from the way you answered the last question. I asked if it was documents or if it was the lawyers talking about the documents, and you had said it was the documents, but now you're referring to a transcript, which means the lawyers talking about them. Well, there was both. The lawyers were talking about the documents that my client produced in response to discovery. And counsel brought those documents with them and presented it to the court. In fact, they filed it prior to the hearing. So those documents, so if I contradict myself, I apologize. Both. There were documents presented to the court and there was discussion, as the transcript indicates. Leave to amend is usually, it's required to be under Rule 15, granted liberally. And it's certainly the issue in a 12b-6. Why wouldn't the plaintiffs be entitled to leave to amend after they could complete more discovery and get the documents? Because it would be futile. If they were given leave to amend and the second proposed second amendment complaint had been allowed to be filed, then my client would have simply filed another motion to dismiss. The allegations. I think what they're saying is they don't even know what to say in a second amended complaint because they don't have discovery yet. Well, there was discovery done as. Well, there's always some, and there's never all possible, and cases go somewhere in between. Correct. But their own allegations, taking the allegations of first amendment complaint, and even if you consider the allegations in the proposed second amendment complaint, they've got a fatal flaw, and that fatal flaw is that they allege that they not only ordered the product in June of 2008, but they began using the product in June of 2008. That is why their argument that there were multiple orders doesn't hold water. Why wouldn't it be inherent in this case that there would be a delay because the defect could not be expected to manifest itself until later? This stuff is window washing fluid, and until you've applied the window washing fluid to the windows and some time has gone by so that they can dry and whatever happens to the glass happens and you can see or not see through it, why wouldn't the defect necessarily be discovered later than, rather than upon receipt of the window washing fluid? Well, first there's no allegations anywhere about why other than the fact that because of the position of the sun in Florida it couldn't be seen. I mean, maybe if we were in Alaska that might be a little more believable, but assuming that that's true. The fact is that this is, as you mentioned, it's window washing. It's a paste, actually. Once you put it on, either it scratches or it doesn't scratch the window. They didn't apply it and then months later all of a sudden the scratches developed. It either happens when you do it or you don't. They were applying this paste. You're saying you can see the scratches immediately when you put this stuff on? Well, there's absolutely no allegation as to why. They don't state in any of their pleadings that there was some kind of a period of time in which these scratches developed or because maybe something else had been done that caused these scratches to occur. There's no allegations whatsoever. The only allegations are we used it and oh. No allegations. That's just an invitation to an amended complaint. Well, they have to prove why they didn't use reasonable diligence in discovering it. They could plead that later if they got to amend their complaint. Let me ask you something else about this. Yes. There are multiple shipments. Correct. Suppose we accept the proposition you urge that California law applies and suppose we accept the proposition you urge that under California law the statute starts running when the shipment is made, not when it's received and not when the product is used and the defect is discovered. Suppose we accept all that. Weren't some of the shipments still made within four years of when the complaint was filed? Yes, that would be true. So why wouldn't the damage from those within four year shipments be actionable, even accepting all of the propositions you've urged? Because they started using the product from day one in June. So is California law that if you get multiple shipments, the statute starts to run from the first shipment, not the last? Well, they would have had a full month from June of 2008 until July when they claimed the second shipment was made where they actually used a product. They claimed they were using it for 14 hours a day to have discovered any defects in the product. But I'm confused. You're saying when they discovered it doesn't matter. No, it does. When they should have discovered it. Well, but under 2725 in federal common law, which is informed by UCC 2-725, the state and federal claims accrued upon delivery of Bioclean rather than on the day that JBP discovered or should have discovered the damage allegedly caused by Bioclean. Is that correct? Yes, but we— Well, if that's correct, then deliveries after would be within the period and are actionable. But under— After July 13, 2008, any delivery would be actionable, wouldn't it? But under California Commercial Code 2401, it says it's the date of shipment. And there are exceptions. But some things were shipped within the four years. Right. Right, but— So those are actionable, aren't they? But you've got to go back to the date of the first shipment because from the date of the first shipment, the product was being used. How can the statute of limitations start running even before shipment of the product? It doesn't. It starts after it's been shipped and when they start using it. So why would it matter whether other product was shipped outside the four years? I'm sorry, say that again? You're shipping multiple times. Correct. Some are outside, some are inside. Why aren't the inside ones actionable? I mean, the fact that there were outside ones eliminates any possibility of shipments inside falling within the period in which they would become actionable? Well, yes, because they should have had reasonable— Should have, should have, should have. Yes. But that isn't the way this works. You look at these certain dates. Right, and the date that's important— It doesn't make any difference whether they should or shouldn't have on the dates. You look at the dates. Well— That's what triggers the running of the clock, doesn't it? The running of the clock, our position is the running of the clock began in June of 2008. That's your position, but you've got to show us that that's right. Yes, well, that's what the California Commercial Code, based on 2401, that's what it says. Now, they are arguing that, well, it's because there's multiple shipments, and they were using it, and I understand their argument about that. You both seem to have internally inconsistent arguments. You want—you don't want the ones that are inside the time to count. He wants to have everything count, but we're citing what is— but then you're both arguing that the same statute is basically applicable. Look, our argument is the dates begin to run from the first shipment. All the other shipments— I got that, but was there one large purchase, and was it taken care of in multiple shipments of one large purchase? Or did they say, we'll purchase five, and then later on they say, now we want six, now we want seven? What's the factual scenario here? There was—they're all about equal. There's some a little more than others. So it's one purchase, another purchase, and another purchase. Were they individual purchases? No, I understand what you're asking. If they're individual purchases, some of them fall within the period in which they can become actionable. But they were all for the same purchase. But then he argues if it's one purchase, he cites a case and said then it's at a cruise. So you can't have it both ways. They're either individual or one purchase. It was for one project, and the shipments were delivered at different times. Look, it's for one—if it's for—if it's one purchase, you get an order for 100 buckets. And you say, well, we only have 20 buckets on hand now. We'll send you the first 20. And then you send another 20 and another 20. If the deal was for 100 buckets, it would seem like the seller has not complied until the 100th bucket is shipped, which is within the four years. So you're liable for the entire thing. And if you say that they bought 25 buckets. We sold them 25, and it was shipped before the four years. No claims on that. We sold them another 25. It was shipped before the four years. No claims on that. They're barred. And then they bought a third and a fourth 25 within the four years. They're not barred by limitations. And it seems like you're saying it's one shipment for purposes of discovery, but discovery doesn't matter because discovery is three months after the fourth shipment. So either discovery matters and it's one shipment, in which case statute of limitations bars nothing, or discovery doesn't matter. What matters is the time from the shipment, in which case some of the deliveries are barred and some of the deliveries are not barred. And I just can't understand what you're saying. I think very quickly what I'm saying is it doesn't matter. What matters here is based on the first shipment, they started using that product. And upon using that product, that would have given them reason to discover if they had used any reasonable diligence or standing in front of them cleaning. That's fine as far as it goes. Let's say they do get the first shipment. They apply it. It's garbage. It just ruins windows instead of cleaning windows. One thing they could do is not buy any more. And another thing they could do is sue within four years. But they did buy more in this case because they didn't know it was going to mess up the windows. If they did buy more, why don't they get four years from the subsequent purchase? Because they're claiming that everything that they bought was defective, not just the third shipment or the fourth shipment. Maybe they got half a loaf and not all of the loaf that they're looking for. But there's no allegation that it was the third delivery or the fourth delivery that caused a defect. Well, they say all the defects. That's right. All the deliveries cause defects. So why wouldn't they get the claim on the deliveries within the four years? Because the first delivery and shipment or delivery. But they should have known. You're saying they should have known that anything from this seller is garbage. No. And not made the subsequent purchases. But that doesn't affect the statute of limitations. Well. I've never seen where earlier knowledge that you shouldn't have bought from this vendor cuts off your right to sue when you got the earlier knowledge, not when you made the purchase. That's not what Respondent is arguing. Respondent is arguing is when they had it, they had the opportunity. They have to use reasonable diligence in determining whether or not this product was defective. They would have known. Reasonable diligence is about whether to buy this stuff. Well, no, because they used it. And once they use it, they've seen what this product can or cannot do. Well, they couldn't have used what they didn't have. But they did use for a month, 14 hours a day, they used this product for one month. Okay. I think we have your argument in mind, and you're in overtime. Unless the panel has additional questions, your time is up. Thank you. Thank you. You have a little less than two minutes. Yes, Your Honor. I wanted to point out that some of this is a product of we're at a 10B6 motion, and everything gets dismissed one time. 12B6? 12B6, I'm sorry. The plaintiff, my client, didn't get a single chance to amend 10 of the 12 causes of action that it brought on that day. Not a single chance to amend. One of them was an indemnity claim. Yes. Now, how does the indemnity claim work? Don't you have to have a judgment or a settlement? You don't. You just have to have damages. I thought indemnity and damages were two different things. Right. If you paid damages to the building owner, you might be entitled to indemnity from the manufacturer. But if you never had to pay the building owner, then it seems to me that what you'd be entitled to is damages. Indemnity and damages is different. Just give us a case that supports your position. Because I'm in agreement, too, that indemnity, you need a formal judgment or a settlement. So give us a case that says you don't. People, X, Rel, Department of Trump, Superior Court, 36, California, California, 1980. The claim accrues. Did you say Trump? I'm sorry? Trump. Yes, did you say Trump? Trump, like the politician. We're trying to find the case. Department, X, Rel, Department of Transportation, the Superior Court. Transportation. Transportation. Sorry about that. So the statement is the claim accrues at the time the indemnity claimant suffers loss or damage. That is at the time of payment of the underlying claim, payment of a judgment thereon, or payment of a settlement thereon. Boom, and you don't have a judgment or a settlement. You're confusing indemnity and damages. What we have is the law in California, and the case is cited here. That case doesn't support your proposition at all. There's a difference between that. They're talking about when the claim for indemnity accrues, not saying indemnity is the same thing as damages. Do you have a judgment or a settlement? No, because my client. No, that's out. I don't think that's accurate. The law in California also says that. We will educate you. Okay, is that your best case? If you have another case, you should give us another case. But you don't have to wait to get sued in order to take care of a problem. So you can do for indemnity before there's even a settlement or a judgment? You can sue if you have to go out there before a settlement, before a judgment. There's not a case or controversy yet if there's no judgment or settlement. There's a settlement in this case that we didn't get to plead because the owner demanded performance. We settled. We gave him the performance. And if they want to say we charged too much for it, fine, but there is a settlement. We just didn't get to plead it. So you do have a settlement. You just haven't pleaded it yet. In writing, we didn't get to plead it. We didn't get to be more specific. So what you're looking for is indemnity for what you had to spend to make the owner happy. Right. Our costs. Okay, now I understand the claim. Thanks. Okay. Okay. Your time's expired. You're one minute over. So unless the court has additional questions, your time's up. All right, thank you for your argument. This matter will stand submitted.
judges: Trott, Kleinfeld, Callahan